UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES V. REED,<br><br>      Plaintiff,<br><br>      v.<br><br>WASHINGTON STATE, JOHN E. BIDDULPH, FRED FOX, JOHN D. SERVATIUS, JOSHUA GREENE, CHRISTOPHER FITZPATRICK, MICHAEL KLEMKE, and JOHN DOE, are sued in their individual capacities,<br><br>      Defendants. | No. 2:14-cv-00366-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court is Defendants' Motion for Summary Judgment, ECF No. 11. The motion was heard without oral argument.

    Plaintiff Charles V. Reed is an inmate of the Washington State Department of Corrections, currently serving his sentence at Clallam Bay Corrections Center, in Clallam Bay, Washington. At the time of the incident in question, he was serving his sentence at Airway Heights Corrections Center, in Airway Heights, Washington. Plaintiff is suing for damages and injunctive relief under 42 U.S.C. § 1983, alleging that he was subjected to unequal treatment during his unjustified confinement in administrative segregation for 36 days, as well as being transferred

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 1

to another facility on the basis of a fabricated report. He alleges the false report was generated in retaliation for filing a prior lawsuit against Defendant John Biddulph.

Plaintiff originally filed suit in Spokane County Superior Court. Defendants timely removed the action to the Eastern District of Washington, and now move for summary judgment.

## MOTION STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 324; *Anderson*, 477 U.S. at 250.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 2

weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## BACKGROUND FACTS

Back in 2011, Plaintiff filed a civil rights action in Spokane County Superior Court and named John Biddulph as one of the defendants. That action was dismissed on a summary judgment motion. Three days later, on a Monday morning, Plaintiff was placed in administrative segregation, pending an investigation, although the details of the allegations were not given to Plaintiff.

On the same Monday morning, Defendant John D. Servatious from the Internal Investigation Unit at AHCC reported that he had received a phone call from Defendant John Doe, who stated that Plaintiff had made a threatening statement directed toward Genevieve Burk, a counsel at AHCC.[1] Defendant John Doe also stated that Plaintiff was upset about something regarding his classification.[2] Defendant Servatious relayed this information to Defendant Michael Klemke, Correctional Program Manager, who in turn, relayed the information to Defendant Biddulph, who in turn, initiated an Ad/Seg referral characterizing Plaintiff as being a threat. The result was that Plaintiff was removed

---

[1] The informant stated that Plaintiff made the following comment: "It would be as easy as Jayme Biendl." According to Defendants, the year prior to Plaintiff's statement, Corrections Officer Jayme Biendl was murdered by an offender while working at the Monroe Correctional Complex. Plaintiff maintains that the report generated by Defendants concerning the informant's statement is false.

[2] According to Plaintiff, his classification reviews are conducted only once a year. Also, Scott Anderson was the assigned Counselor on April 9, 2012, when Plaintiff was reviewed for classification, not Counselor Burk. Plaintiff's next review was not due until sometime in March or April of 2013.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 3

from the general population at approximately 8:00 a.m.

Defendant Fred Fox, Classification Counselor at AHCC, was also notified that Plaintiff was being referred to segregation for "pending investigation" and threat to others. Fox's duties included reviewing investigative reports and recommending appropriate custody and placement designation based upon the information in those investigative reports. At the time he was notified, Fox did not receive any specific information related to the allegations against Plaintiff. Eventually, he became aware of the allegations and informed Plaintiff that the pending investigation was regarding threats made to a staff member. It does not appear that Plaintiff was ever notified by Fox of the specific allegations, including when the threat supposedly took place, what was said, and who reported the threat.

An informal review was held on November 7, 2012. The staff at AHCC anticipated the investigation of Plaintiff would result in a prohibited facility contact concern, and therefore, classification action was started on November 19, 2012. The concern was posted on November 21, 2012, and classification action was completed on the same day to expedite Plaintiff's transfer and release from segregation. An intermediate review was held on November 21, 2012. At that time, Plaintiff was informed that he would be transferred from AHCC due to posted prohibited facility contact concerns.

Plaintiff filed a grievance on December 3, 2012. Plaintiff alleged the following:

> John Biddulph is a defendant in a civil right [sic] action out of Spokane under Cause No. 11-02-03046-1. On 11/02/12 that case was summarily dismissed, the following Monday, 11/05/2012 Mr. Biddulph requested and authorized my being placed in Administrative Segregation on pretense of investigation for alleged threat on staff. I was not provided an incident report, I'm not told who it was that was threatened, nor what was said, or when and where this would have taken place. There was no infraction. These actions were deliberate to cause an innocent person injury and to receive punishment by Ad/Seg and transfer to another facility because I enforced or attempted to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 4

enforce my equal protection rights. This further has placed false information on my record for which I have an interest in proper classification for my review.

Plaintiff asked that the false allegation be taken off his record, that he be provided an incident report, and also be provided the "who, why, when, where, and how information" related to these false allegations. The Grievance Coordinator responded that Plaintiff's grievance was too late.

He filed another grievance on December 14, 2012, and stated the following:

> Grievance 12525423 submitted on 12/02/02 [sic] is not past the time frame for submitting this grievance because the circumstances justifying a grievable issue did not exist until November 21, 2012. This grievance was filed only 10 days after. I did not know why, who, what, when, where and how, the given reasons needed to justify an administrative segregation placement. There was no incident report and there was no infraction to allow for a proper determination of whether to file a grievance, or an appeal.

Defendant Christopher Fitzpatrick responded that Plaintiff's complaint was non-grievable under the DOC Grievance Program because he was grieving his segregation placement. He concluded that Plaintiff's grievance involved a classification issue that has an established appeal process.

Roughly five months later, and after a public disclosure request, Plaintiff learned the specifics of the why he was placed in administrative segregation and transferred to another facility. Plaintiff filed a grievance and made the following statement:

> Actions of Other Offenders: Today, May 31, 2013, I first received, and learned information through Public Disclosure that on 11/05/12, AHCC IIU received information from Confidential Informant AHCC [John Doe] that I had made some disturbing comments about CC3 Burk. The CI [John Doe] stated that I made a comment to the effect of, "it would be as easy as Jayme Biendi." [See Case No. AHCC 12-1312-12-PO1]. This allegation caused me to be placed in Administrative Segregation, loss of 1.73 Days Earned Time, with no infractions, and then transferred to Coyote Ridge Corrections Center

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 5

due to separate placed on November 21, 2012 between myself and burk. Offender [John Doe] provided a false statement against me for the purpose of causing an innocent person to be penalized and proceeding against by lying. In addition, it is my belief that offender [John Doe] conspired with State Officials within Airway Heights Corrections Center to the same, as part of an ongoing retaliation stemming from a civil complaint out of Spokane County Court Superior Court, under Cause NO. 11-02-03046-1.

Again, Defendant Fitzpatrick responded that this is an Administrative Segregation issue that is not grievable. Plaintiff filed another grievance in response to Fitzpatrick's determination. He explained that he was not grieving his administrative segregation. Rather, he was grieving the actions of another offender, who was involved in conspiratorial actions with staff to cause him harm by making a false accusation against him. Fitzpatrick concluded that this grievance was repetitious to Plaintiff's previous grievance.

In this instant action, Plaintiff asserts a claim for retaliation under 42 U.S.C. § 1983 based on the named-Defendants' role in creating the fabricated report regarding the threat, or failing to intervene to prevent the false report because Plaintiff previously had initiated grievances and sued Defendant John Biddulph. He also presents a claim for an intentional tort under Washington law based on these same facts. In addition, Plaintiff brings a claim against Defendant Fitzpatrick for intentionally refraining from ensuring that Plaintiff's grievances were properly addressed and resolved by refusing to initiate formal staff conduct grievances as requested; and a claim against the State of Washington for the failure to properly address his grievances. Plaintiff is seeking declaratory judgment and compensatory damages.

Defendants now move for summary judgment on all of Plaintiff's claims.

## ANALYSIS

**1. Section 1983 liability**

Section 1983 requires a plaintiff to prove (1) a person acting under color of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 6

state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that 'causes' the deprivation of which [the plaintiff complains]." *Redman v. County of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991)(brackets in the original); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The Ninth Circuit has rejected any type of "team effort" theory of liability. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (rejecting "term effort" theory because it removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a "team effort."). On the other hand, the Circuit has imposed liability on all "integral participants," such as an officer who provides armed backup during unconstitutional search. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Moreover, there is no respondeat superior liability under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978).

**2.  Plaintiff's Claims**

The underlying wrongful act presented in Plaintiff's complaint is the alleged false report which Plaintiff believes was fabricated in retaliation for his exercise of his First Amendment right to petition the Government for redress of grievances. In their briefing, Defendants do not address Plaintiff's allegations that the report was

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 7

false.[3] Rather, their arguments in support of their motion for summary judgment are presented as if there is no question of material fact about whether the report was indeed false. The evidence submitted by Defendants does not establish that there are no material facts on this issue. This does not mean, however, that this case needs to proceed to trial. In reviewing Defendant's motion, the Court views the facts in the light most favorable to Plaintiff, the non-moving party. This means it must assume the report was fabricated; however it does not necessarily mean that Defendant's Motion for Summary Judgment must be denied. As set forth below, Plaintiff has failed to present sufficient evidence to establish any genuine issue for trial, and has failed to make a sufficient showing on essential elements of his claims.

### A. First Amendment Retaliation Claim

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). In order to successfully bring a retaliation claim, the prisoner-plaintiff must show: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* Allegations of unlawful intent may be supported by circumstantial evidence. *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997).

---

[3] In their reply, Defendants argue that Plaintiff has failed to provide the Court with any credible evidence to support his claims other than provide self-serving statements. When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 8

To prevail on his retaliation claim, Plaintiff must show that the protected conduct was a "substantial or motivating factor" behind Defendants' conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). To show the presence of this element on a motion for summary judgment, then, Plaintiff need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to Defendant's intent in creating the false report. *Id.*

The prisoner-plaintiff need not demonstrate a total chilling of his First Amendment rights in order to succeed on a retaliation claim. *See Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2004) (holding that destruction of inmate's property and assaults on the inmate are enough to chill inmate's First Amendment rights, even if inmate filed grievances and a lawsuit). The proper inquiry is whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id.*

Plaintiff's theory of liability requires the Court to connect the dots in a number of ways, none of which are supported by the evidence or are legally sufficient to survive summary judgment. Simply put, Plaintiff has failed to make a sufficient showing on an essential element of his retaliation claim.

In one conceived scenario, Defendant John Biddulph, in retaliation for being sued by Plaintiff, instructed Defendant John Doe or Defendant Servatious to create a false report, and also instructed the other Defendants to treat the report as false. However, there is nothing in the record to suggest any collusion on the part of all of the Defendants.[4] Indeed, Plaintiff's theory that in less than three weekend

---

[4] To the extent Plaintiff is relying on a conspiracy theory to enlarge the pool of responsible defendants, he has not presented any facts that suggest the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *See Lacey v. Maricopa County*,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER**   ~ 9

days, Defendants conspired to retaliate against him is not plausible or supported by any evidence in the record.

Another scenario is Defendant Servatious created the false report, or conspired with John Doe to create the false report. Conceivably under this scenario, the other Defendants would not have known that the report is false. It follows under this scenario that the actions taken by the other co-Defendants would be appropriate, since they would be based on their understanding that the report was true. Under this scenario, Defendant's arguments regarding valid penological concerns based on the perceived threats would defeat Plaintiff's claims against the other Defendants. Even more important, this scenario is not a valid theory because there is nothing in the record to establish any motivation on the part of Defendant Servatious or John Doe to file a false report simply because Plaintiff sued Defendant Biddulph.

A different scenario could be that Defendant John Doe created the false report for some other reason that has nothing to do with Plaintiff filing any grievances or law suits. Indeed, there is nothing in the Complaint, or the record to suggest that Defendant John Doe knew about Plaintiff's lawsuit. And, if this were true, none of the Defendants would have acted with retaliatory motive, and their actions would be based on valid penological concerns.

Finally, a close reading of Plaintiff's complaint suggests that Plaintiff is attempting to find all of the Defendants liable under a "team effort" theory of liability. This is not sufficient under Ninth Circuit precedent.

---

693 F.3d 896, 935 (9th Cir. 2012) (quoting *Gilbrook v. City of Westminister*, 177 F.3d 839, 856-57 (9th Cir. 1999). To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 10

Consequently, Plaintiff's retaliatory claim fails because he has not met his burden of putting forth evidence of retaliatory motive on the part of any of the Defendants. There is nothing in the record to suggest that any of the Defendants (other than, of course, Defendant Biddulph) knew that Plaintiff was suing Defendant Biddulph or that they knew the action had been dismissed. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (finding insufficient evidence that prison officials who were involved in the transfer decision were actually aware of the protected conduct). As Defendant points out, the underlying basis for the retaliatory motive is the timing of the report of the threat and the dismissal of his state court action. While timing can properly be considered as circumstantial evidence of retaliatory intent, *Pratt*, 65 F.3d at 808, in this case, there is little else to support such an inference. If Defendant Biddulph truly wanted to retaliate against Plaintiff for filing the lawsuit, it is more likely that he would have retaliated during the pendency of the proceedings, rather than waiting until the action was dismissed. While Plaintiff speculates he was placed in administrative segregation to prevent him from filing an appeal, his theory is just that, speculation. No reasonable jury would return a verdict in Plaintiff's favor based on these facts.

Plaintiff also alleged that Defendant Fitzpatrick failed to process his grievances and did so because he had retaliatory intent. Plaintiff has not met his burden of establishing retaliatory motive on the part of Defendant Fitzpatrick. Other than timing assertions that the grievances were rejected months after his lawsuit against Defendant Biddulph was dismissed, Plaintiff fails to provide any evidence to support his claim. The rejection of Plaintiff's grievances is adequately explained by the requirements of the DOC Grievance Program, rather than any retaliatory motive on the part of Defendant Fitzpatrick.

Plaintiff has not met his initial burden of showing that the filing of the lawsuit was a substantial or motivating factor in the creation of the allegedly false

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 11

report. As such, summary judgment on Plaintiff's First Amendment claims is appropriate.

### B.  Fourteenth Amendment claim-Due Process

In his complaint, Plaintiff alleges Defendants violated the Fourteenth Amendment where the creation and implementation of a false report caused:

> Plaintiff, an innocent person to be taken out of main population, and placed in administrative segregation where he suffered for 36-days unjustifiable unequal treatment while in administrative segregation through loss of earned good-time, loss of law library, loss of typewriter and its paraphernalia necessary for preparing legal pleadings, the plaintiff was handcuffed and attached by a dog-leash when going to and from the shower, and was placed within a very, very cold cell, he was not able to go outside for walks, or feel the raise of the sun, then he was transferred to an institution, marked as a threat to staff, the facility has a higher violence rate, with nothing but gray rocks and cement for its scenery, was done maliciously and sadistically without any penological objective.

ECF No. 1.

Defendant argues first that Plaintiff's 36-day stay in segregation does not implicate a liberty interest under the Fourteenth Amendment, and even if it did, Plaintiff received adequate due process related to his 36-day stay in segregation. The Court agrees. As such, summary judgment on this claim is appropriate. Plaintiff has not established any genuine issues of material fact regarding this claim, and Defendants have shown they are entitled to judgment as a matter of law.

### C.  Personal Participation of Defendant Klemke and Defendant Greene

Defendants argue that Plaintiff failed to allege personal participation on the part of Defendant Klemke and Defendant Greene. They argue that there is no evidence to show Klemke played any role in making decisions concerning Plaintiff's segregation placement or retention, transfer from AHCC or that Klemke

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 12

was involved in the investigation against Plaintiff. Defendant also asserts that the only involvement Green appears to have in the matter is reviewing the investigation report. Again, the Court agrees. As such, summary judgment is appropriate for Plaintiff's claims asserted against Defendant Klemke and Defendant Green because Plaintiff has failed to show that these Defendants personally participated in creating the allegedly false report, or were involved in the decision to transfer Defendant or the investigation.

### D. Washington State Intentional Tort Claim

Plaintiff alleges that Defendants have "constituted an intentional tort under this law of Washington state. RCW 4.92.090." Other than make a general tort claim allegation and cite to the liability statute, Plaintiff has failed to present any facts or allegations that support an actionable tort claim.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 11, is **GRANTED**.

2. Plaintiff's Motion to Compel, ECF No. 18, is **DENIED**, as moot.

3. Plaintiff's Motion to Stay, ECF No. 20, is **DENIED**, as moot.

4. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 17th day of July, 2015.

_____
Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ORDER** ~ 13